**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 19-cr-227-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  CRAIG MICHAEL PEARSON,

      Defendant.

---

## PLEA AGREEMENT

---

      The United States of America, by and through Andrea Surratt, Assistant United States Attorney, and defendant, CRAIG MICHAEL PEARSON, personally and through counsel, David Johnson, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing.

### I.  PLEA AGREEMENT

      This plea is pursuant to Fed. R. Crim. P. 11(c)(1)(A).

**A.**    **Defendant's Obligations**

    **1.**    **Count of Conviction**

      The defendant agrees to plead guilty to Count One the Indictment, which charges a violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (conspiracy to distribute and possess with intent to distribute 500 grams and more of methamphetamine).

      The defendant also agrees to admit the forfeiture allegation contained in the Indictment.

    **2.**    **Waiver of Appeal**: The defendant is aware that 18 U.S.C. § 3742 affords



COURT EXHIBIT
1

a defendant the right to appeal the sentence imposed.  Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria:  (1) the sentence imposed exceeds the maximum penalty provided in the statute of conviction, (2) the sentence exceeds the advisory Guidelines range as calculated based on offense level 31, or (3) the Government appeals the sentence imposed.  If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.  This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing Guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

### 3.     Forfeiture of Assets

The defendant agrees to admit the forfeiture allegation contained in the Indictment.[1]

---

[1] After sentencing in this case, the government agrees to return to Defendant (or his designee) the Black Samsung Galaxy S8+ model# SM-G955U Mobile Phone, w/ IMEI# 357725080323471 seized from Defendant Pearson.

**B.     Government's Obligations:**

1.     **Sentencing Recommendation**: In exchange for the defendant's plea of guilty, the Government agrees to recommend the Court give the defendant full credit for acceptance of responsibility, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under U.S.S.G. §§ 3C1.1 and 3E1.1, comment (note 4) between the time of the guilty plea and sentencing.

2.     **Prior Felony Information**: In exchange for the defendant's plea of guilty, the Government also agrees that it will not file a prior felony information pursuant to 21 U.S.C. § 851 in connection with this Indictment.

3.     **Dismissal of Count**:  In exchange for the defendant's plea of guilty, the Government also agrees that, at the time of sentencing, it will move to dismiss Count Three of the Indictment as to the defendant, CRAIG MICHAEL PEARSON.

## II.  STATUTORY PENALTIES

The statutory penalty for the offense charged in Count One of the Indictment is not less than 10 years but not more than life imprisonment; a $10,000,000 fine; not less than 5 years supervised release or more than life supervised release; and a $100 special assessment fee.

If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

## III.  COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.  If the defendant is

3

an alien, the conviction may cause the defendant to be deported and removed from the United States or confined indefinitely if there is no country to which the defendant may be deported, to be denied admission to the United States in the future, and to be denied citizenship.

## IV.  ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offenses to which the defendant will plead guilty are as follows:

Count One:

*First*: two or more people agreed to violate federal drug laws;

*Second*: the defendant knew the essential objective of the conspiracy;

*Third*: the defendant knowingly and voluntarily involved himself in the conspiracy;

*Fourth*: there was interdependence among members of the conspiracy; and

*Fifth*: the conspiracy involved at least 500 grams of mixtures and substances containing a detectable amount of methamphetamine.

## V.  STIPULATION OF FACTS

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory Guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations.  To the extent the

4

parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which do not contradict the facts to which the parties have stipulated and which are relevant to the Guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4 and 18 U.S.C. § 3553(a), or to this Court's overall sentencing decision. In "determining the factual basis for the sentence, the Court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information." U.S.S.G. § 6B1.4 Comm.

The parties stipulate to the following facts:

March 25, 2019 sale of methamphetamine

Prior to Pearson's March 25, 2019 sale of methamphetamine to an undercover officer (the "UC"), the UC and Pearson communicated about the potential sale on Facebook. Specifically, Pearson agreed to meet the UC in Colorado Springs and sell the UC two ounces of methamphetamine for $450. The UC expressed that good quality methamphetamine is important to him.

On the afternoon of March 25, 2019, Pearson met the UC in a parking lot in Colorado Springs. Pearson told the UC that he (Pearson) had only one ounce available for $300. Pearson asked the UC to follow him back to his (Pearson's) house. The UC did as asked, and Pearson went into a residence and came back out with a clear baggie containing methamphetamine, which Pearson gave to the UC. The UC complained that the price ($300 an ounce) was high, and Pearson responded

5

that "it's cheaper as you buy more."  Pearson told the UC that he (Pearson) would, in the future, be able to supply the UC with a full pound of meth for between $3,200 and $3,400.

The drugs that Pearson sold the UC on March 25, 2019 were tested by a DEA laboratory and determined to be 27.77 grams of 99% (+/- 4%) pure methamphetamine.

<u>April 25, 2019 sale of methamphetamine</u>

Between the March 25, 2019 sale and the April 25, 2019 sale of methamphetamine to the UC, Pearson and the UC discussed on Facebook Pearson's ability to get a pound of methamphetamine for the UC.   Pearson told the UC that he (Pearson) would be able to sell a pound of meth for "32 to 33 for the full one."  On April 22, 2019, the UC told Pearson that he (the UC) would have money available for the purchase by April 25.  Pearson assured the UC that he would "be ready."  The UC asked if Pearson "can have it in hand and shit or we got to go to a bunch of places and piece it."  Pearson responded "it should be a quick one" and assured the UC that it is "usually pretty smooth the people I deal with."  On April 24, Pearson told the UC that his supplier went out of town, but "my other friend has it too" but for $3,400 per pound instead of $3,300.  The UC agreed to the deal.

On April 25, 2019, Pearson met the UC in a residential parking lot in Colorado Springs.  Pearson was driving and co-defendant Luis Fabian Ortiz was in the passenger seat of Pearson's truck.  Pearson and the UC engaged in conversation, including about Pearson brokering a deal with additional customers from out of state.  During this conversation, the UC asked Pearson if Pearson could get three additional

ounces of methamphetamine for a total of one pound and three ounces (instead of just a pound).  Pearson expressed that he was unsure if his source could do that.  He said he couldn't guarantee it and he would have to check; "we'll see".

The UC gave Pearson $4,000 and Pearson and Ortiz drove to a nearby apartment complex to obtain the methamphetamine. Ortiz walked up to a particular apartment (the "Apartment") and returned to the truck with a bag containing methamphetamine.  Pearson and Ortiz returned to where the UC was waiting and delivered the methamphetamine.  Upon their return, the UC asked Pearson if they were able to get the additional amount as requested.  Pearson told the UC that Ortiz was able to get the additional requested amount.  Pearson and Ortiz were arrested. This methamphetamine was tested by a DEA laboratory and was 516.6 grams of 99% (+/- 4%) pure methamphetamine.

After Pearson and Ortiz gave the methamphetamine to the UC, agents conducted surveillance on the Apartment.[2]   During this surveillance, agents observed an individual in a Nissan Altima arrive at and then, 10 minutes later, leave the apartment concealing something in his jacket.  This car was stopped and searched and agents located 899.3 grams of 99% pure methamphetamine in the Altima.

Co-defendant Luis Rene Zavala-Acosta was observed leaving the Apartment. When Zavala-Acosta was arrested, he had a key to the Apartment on his person.

The Apartment was subsequently searched.  Agents located 2,711.6 grams of heroin and 3,143.7 grams of 99% pure methamphetamine in the Apartment.  Co-defendant Jesus Adrian Padilla-Echeverria was in the Apartment when it was

---

[2]  Mr. Pearson denies knowledge of the apartment, or the people and items found in or leaving it.

searched.  Padilla-Echeverria was arrested in the Apartment.  Zavala-Acosta's ID was located in the Apartment in a small closet with some of the recovered drugs.

## VI.  ADVISORY GUIDELINE COMPUTATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory Guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory Guideline range called for by the United States Sentencing Guidelines.  To the extent that the parties disagree about the Guideline computations, the recitation below identifies the matters which are in dispute.

Offense Level:

A.    The Guideline application to Count One is U.S.S.G. § 2D1.1.

B.    It is the Government's position that, including relevant conduct and what was reasonably foreseeable to the defendant as part of the conspiracy, the defendant is responsible for 4,587.4 grams of 99% pure methamphetamine, as follows:

- 27.8 grams sold to the UC on March 25, 2019
- 516.6 grams sold to the UC on April 25, 2019
- 899.3 grams that were distributed to the driver of the Altima by Padilla-Echeverria and Zavala-Acosta from the Apartment on April 25, 2019
- 3,143.7 grams recovered from the Apartment on April 25, 2019 during execution of a search warrant

It is the Government's view that, pursuant to U.S.S.G. § 2D1.1(c)(1), because the defendant is responsible 4.5 kilograms or more of "ice," his base offense level for Count One is 38.

C.      It is the defendant's position that the methamphetamine found on someone leaving the apartment and found in the apartment does not satisfy the requirements of relevant conduct, as it relates to Mr. Pearson.   It is the defendant's position that he is responsible for, at most, the 27.8 grams sold to the UC on March 25 and the 516.6 grams sold to the UC on April 25, for a total of, at most, 544.4 grams of 99% pure methamphetamine.  Pursuant to U.S.S.G. § 2D1.1(c)(3), because the defendant is responsible for at least 500 grams but less than 1.5 kilograms of "ice," it is the defendant's view that his base offense level for Count One is 34.

D.      The defendant should receive a decrease in the offense level by -2 based upon his acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).  The defendant should also receive a decrease in the offense level by -1 for timely notifying the government of his intent to plead guilty pursuant to U.S.S.G.  § 3E1.1(b).  At sentencing, the government will make the appropriate motion for the one-point reduction.

E.      Accordingly, in the Government's view, the total offense level is 35, and in the defendant's view it is 31.

Criminal History:

F.      The parties acknowledge and agree that the estimation regarding the defendant's criminal history is tentative.  The defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the Court.  The defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final Guideline range and result in a longer term of imprisonment.  Based upon the facts known at this time

regarding the defendant's criminal history, the parties believe that the defendant falls within Criminal History Category ("CHC") II. § 4A1.1.

       Guidelines Range:

       G.     For Count One, the Guidelines range resulting from the estimated offense level of 35 and the estimated criminal history category II is 188-235 months' imprisonment.  The Guidelines range resulting from an estimated offense level of 31 and criminal history category II is 121-151 months' imprisonment.  Count One carries a mandatory minimum sentence of 120 months.

       The imprisonment range at offense level 35 could be from 168 (at the bottom of CHC I) to 365 (at the top of CHC VI).  The imprisonment range at offense level 31 could be from 120 (at the bottom of CHC I, the mandatory minimum) to 235 (at the top of CHC VI).

       H.     Pursuant to U.S.S.G. § 5E1.2, at an offense level of 35, the fine range for would be $20,000 to $10,000,000, and at an offense level of 31 it would be $15,000 to $10,000,0000, plus applicable interest and penalties.

       The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the Guideline range. In doing so, the Court is not bound by the position of any party.

       No estimate by the parties regarding the Guideline range precludes either party from asking the Court, within the overall context of the Guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing

Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes either party from asking the Court to vary entirely from the advisory Guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VIII.  **ENTIRE AGREEMENT**

This document states the parties' entire agreement.  There are no other promises, agreements, side agreements, terms, conditions, understandings or assurances, express or implied.  In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 10/18/2019 _____
Craig Pearson
Defendant

Date: 10/18/19 _____
David Johnson
Attorney for Defendant

Date: 10/23/19 _____
Andrea Surratt
Assistant U.S. Attorney