IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 19-cr-00227-CMA

UNITED STATES OF AMERICA,

       Plaintiff,

v.

1.   **CRAIG MICHAEL PEARSON**,
2.   LUIS FABIAN ORTIZ,
3.   JESUS ADRIAN PADILLA-ECHEVERRIA, and
4.   LUIS RENE ZAVALA-ACOSTA,

       Defendant.

---

## DEFENDANT PEARSON'S OBJECTIONS AND RESPONSES TO PRESENTENCE REPORT

---

Defendant, Craig Michael Pearson ("Mr. Pearson"), by and through undersigned counsel, David E. Johnson, hereby files the below Objections and Responses to the Presentence Report (Doc. 98) ("PSR"), none of which impact the advisory guidelines calculation:

Paragraph 22 ("sole occupant of the vehicle"):  In the PSR's "Additional Information" section, it describes the following scene during the April 25, 2019 sale: "DEA investigators maintained surveillance of PEARSON's vehicle and followed it to the Vista Peak Apartments, located on Potter Drive, Colorado Springs, Colorado. A surveilling TFO observed PEARSON as the sole occupant of the vehicle."  PSR at ¶ 22. That recitation makes it sound as if Mr. Pearson was observed as the sole occupant of the vehicle as it drove to the Vista Peak Apartments.  But that is not true.  To the extent

that the PSR's recitation makes it seem as if Mr. Pearson was the sole occupant of the vehicle as it drove to the apartment complex, Mr. Pearson objects.

The actual DEA report makes it clear that *both* Mr. Pearson and Mr. Ortiz drove in Mr. Pearson's vehicle to the Vista Peak Apartments. This is what the report states:

> At approximately 1:52pm, PEARSON and ORTIZ departed 3920 E San Miguel St in a black 2000 Chevrolet Tahoe bearing Colorado License Plate KBO645 to obtain the pound of methamphetamine to sell to TFO Garcia. DEA investigators maintained surveillance of the black Tahoe and followed it to the Vista Peak Apartments, located at 1220 Potter Drive, Colorado Springs, CO. TFO James Lamberth later observed the black Tahoe parked outside of 1128 Potter Drive and the vehicle was only occupied by PEARSON, who was sitting in the driver seat. TFO Lamberth observed ORTIZ walk to an unknown apartment on the second floor of 1128 Potter Drive.
>
> At approximately 2:00pm, TFO Lamberth observed ORTIZ walk from an unknown apartment on the second floor of 1128 Potter Drive back to the black Tahoe and enter the front passenger seat.

When looking at what the report actually says, it is clear that *both* Mr. Pearson and Mr. Ortiz were observed in the vehicle. The reference to Mr. Pearson being the sole occupant of the vehicle was describing how, *after* the vehicle arrived at Vista Peak Apartments, Mr. Ortiz got out of the vehicle and went to an apartment. At that time – *i.e.* after Mr. Oritz went to the apartment – Mr. Pearson was, then, the sole occupant of the vehicle. A few minutes later, Mr. Ortiz returned to the vehicle after spending a few minutes in the apartment; Mr. Pearson remained in the vehicle the entire time.

2

<u>Paragraph 22 (drug amounts found in the Tahoe vehicle)</u>: The PSR's "Additional Information" section asserts that "[a] search of PEARSON's vehicle revealed 77.2 grams of suspected methamphetamine and 46.5 grams of suspected heroin. Drug paraphernalia with suspected heroin residue was found on ORTIZ' person."  A few sentences later, the PSR then states: "Also, 28.7 grams of methamphetamine (actual) and 2.796 grams of heroin were in PEARSON's vehicle."  Mr. Pearson objects on two grounds.

First, it should be made clear that Mr. Pearson signed a consent to search form, allowing law enforcement to search his vehicle and recover these items.

Second, the PSR makes it sound as if the 77.2 grams of suspected methamphetamine and 46.5 grams of suspected heroin were *different* or *separate* from the 28.7 grams of methamphetamine (actual) and 2.796 grams of heroin found in the vehicle.  To be clear: they are the same items. The weights first identified in the PSR (77.2 and 46.5 grams) were the initial estimates, in gross weight, contained in the DEA reports.  The lower weights identified a few sentences later in the PSR are the actual testing results of those items, in net weight (i.e. not including packaging).  Thus, instead of the PSR's somewhat confusing statements, it would be more accurate to state: "A search of Mr. Pearson's vehicle revealed a substance that law enforcement originally estimated to be 77.2 gross grams of suspected methamphetamine and 46.5 grams of suspected heroin. Subsequent testing of those items revealed them to be 28.7 net grams of methamphetamine (actual) and 2.796 net grams of heroin."

3

<u>Paragraph 22, Page R-3 (heroin)</u>:  Mr. Pearson makes clear that he has nothing to do with any heroin in this case.  Heroin was not a part of any deal Mr. Pearson made or intended to make. His deal was for methamphetamine and never included (or even contemplated) heroin.  Similarly, Mr. Pearson has no knowledge about the heroin found in his vehicle; it certainly was not his.

<u>Paragraph 40 (heroin)</u>:  Although it does not impact the advisory guidelines calculation in this case, Mr. Pearson objects to the PSR's inclusion of 2.796 grams of heroin when calculating the drug quantity in paragraph 40.  Heroin was never a part of any deal between Mr. Pearson and the undercover DEA agent; there was no talk about heroin whatsoever, nor was heroin ever even contemplated as a part of their dealings.  Without support, the PSR asserts that the 2.796 grams of heroin was "within the scope of the jointly taken criminal activity" and that the heroin was "reasonably foreseeable" to Mr. Pearson.  There is simply no evidence to support that conclusion.  Mr. Pearson had nothing to do with any heroin in this case.  Any heroin found was not "within the scope" of his agreement, nor was it "reasonably foreseeable."

<u>Paragraph 77 (wife)</u>:  The PSR twice misspells Mr. Pearson's wife's first name in paragraph 77.  It should be Titia.  (N.B. The spelling found in paragraph 75 is correct.)  Also, the PSR incorrectly states that their marriage ended in divorce.  That is not correct.  No divorce was ever obtained.  According to undersigned counsel's notes, Mr. Pearson reported to the Probation Office that he "wants a divorce."

4

Paragraph 121 (Section 851 enhancement): Had an enhancement under Section 851 been sought, Mr. Pearson could have faced a mandatory minimum sentence of, at most, 15 years (not 20 years). See 18 U.S.C. § 841(b)(1)(A)(viii); 21 U.S.C. § 802(57)(B).

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ David E. Johnson
DAVID E. JOHNSON
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO 80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Email:  david_johnson@fd.org
*Attorney for Defendant Craig Michael Pearson*

CERTIFICATE OF SERVICE

      I hereby certify that on December 24, 2019, I filed the foregoing ***Defendant Pearson's Objections and Responses to Presentence Report*** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email address:

    Andrea L. Surratt, Assistant United States Attorney
    Email:  andrea.surratt@usdoj.gov

      I hereby certify that I have mailed or served the document or paper to the following participant in the manner (mail, hand-delivery, etc.) indicated next to the participant's name:

    Craig Michael Pearson (via U.S. mail)
    Reg. No. 09497-051
    c/o FDC – Englewood

                                                s/ David E, Johnson
                                                DAVID E. JOHNSON
                                                Assistant Federal Public Defender
                                                633 17th Street, Suite 1000
                                                Denver, CO  80202
                                                Telephone:  (303) 294-7002
                                                FAX:  (303) 294-1192
                                                David_johnson@fd.org
                                                *Attorney for Defendant Craig Michael Pearson*