IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 19-cr-227-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  CRAIG MICHAEL PERSON,

      Defendant.

---

**GOVERNMENT'S SENTENCING STATEMENT AS TO
DEFENDANT CRAIG MICHAEL PEARSON**

---

The United States of America, by and through the undersigned Assistant United States Attorneys, hereby submits the following position with respect to defendant Craig Michael Pearson's sentencing.

<u>Facts and Procedural History</u>

As described in the Presentence Investigation Report ("PSR") and the plea agreement, after contact on social media, Pearson agreed to sell an undercover law enforcement officer a pound of methamphetamine.  Ultimately, co-defendant Luis Fabian Ortiz brokered the methamphetamine deal, which occurred on March 25, 2019. Ortiz left Pearson's truck to purchase methamphetamine from an apartment ("Apartment") occupied by Jesus Adrian Padilla-Echeverria and Luis Rene Zavala-Acosta.  Ortiz gave the methamphetamine to Pearson, who sold it to the undercover officer.

After this transaction, Pearson and Ortiz were arrested.  Officers also obtained a

search warrant for the Apartment and located additional methamphetamine and heroin inside.  Padilla-Echeverria and Zavala-Acosta were also arrested following the search of the Apartment.

For his conduct, Pearson was charged in two counts of a four-count indictment. (Dkt # 37).   In Count One, he was charged with conspiring with Ortiz, Padilla-Echeverria, and Zavala-Acosta to distribute methamphetamine.  He was charged in Count Three with possessing with intent to distribute methamphetamine.  On October 23, 2019, the defendant pled guilty to Count One of the Indictment pursuant to a plea agreement.  (Dkt #93).

Pearson has been in custody since his arrest.

<u>Guidelines Calculation</u>

In the plea agreement, the Government took the position that Pearson was responsible not only for the methamphetamine that was sold to the UC and located in his Tahoe, but also the methamphetamine that was recovered from the Apartment and from one of the Apartment's other customers as drugs that were reasonably foreseeable to Pearson as part of the charged conspiracy.  (Dkt #93, p.8).  Pursuant to the Government's calculation, the defendant's offense level would 35 and his Guidelines range would be 188-235 months.

The defendant took the position that the methamphetamine in the Apartment and that was sold to the other customer was not reasonably foreseeable as relevant conduct, resulting in an offense level of 31 and Guidelines range of 121-151 months. (Dkt #93, p.9).  The PSR agrees with the defendant and calculates an offense level of 31, criminal history category of II, for a Guidelines range of 121-151 months.  (PSR ¶¶

49, 65).  The defendant is also subject to a statutory mandatory minimum sentence of 120 months' imprisonment.

Though the Government believes that the Court should consider the fact that Pearson was able to readily obtain methamphetamine from the large-scale drug dealers in the Apartment when fashioning a sentence for the defendant, the Government does not object to the PSR's Guidelines calculation based on an offense level of 31.  The Government's investigation has revealed that Pearson did not know how much—or what kinds of—drugs were in the Apartment when he used Ortiz to obtain the methamphetamine.  In fact, the occupants of the Apartment, who had never met Pearson, would have undoubtedly taken care to keep that information from Pearson, even if he had sought to learn it.  *See* U.S.S.G. § 1B1.3.

<u>Application of the 18 U.S.C. § 3553(a) Factors</u>

For the reasons discussed herein, the Government recommends that the Court sentence the defendant to 151 months' imprisonment—a sentence at the top of his Guidelines range.

*A.  Nature and Circumstances of the Offense*

Craig Pearson was willing to sell methamphetamine to anyone who had the money to pay for it.  On April 25, 2019, after chatting online with an undercover officer who he had never met for just a few weeks, Pearson agreed to obtain, and sell, that UC a pound of methamphetamine.  And in short order, Pearson was able—through Ortiz— find that pound of nearly 100% pure meth in a drug stash house in Colorado Springs.

Pearson does not care who he hurts, or how dangerous drug trafficking is for himself and the community in which he resides.  All he cares about is making quick

3

money by buying drugs from narcotics traffickers and reselling those drugs for a profit.

This offense was brazen, dangerous and senseless.  And the ease with which Pearson obtained drugs at the UC's request makes clear that the defendant's drug dealing was neither fleeting nor intermittent.  Rather, the defendant was ready and eager to make an illegal deal.

Against the backdrop of Pearson's lengthy criminal history, discussed at length below, the nature and circumstances of the offense do not counsel for any sort of leniency here.  Rather, a lengthy sentence of incarceration is entirely appropriate for this offense that was driven entirely by greed and selfishness.

### B. History and Characteristics of the Defendant

As he stands before this Court, Pearson's criminal history category of II is deceptively low.  Rather, he has an extremely lengthy criminal history, but much of it is years old since, from 2003-2014, he was serving a 165-month federal sentence for manufacturing methamphetamine.

Even before his *other* federal methamphetamine case, though, Pearson was no stranger to the criminal justice system.  He began committing crimes at age 18, when he sustained his first felony conviction for theft.  (PSR ¶ 53).  At age 22, in 1993, he was convicted of his second felony, for assault.  (PSR ¶ 54).  In 1993, Pearson began dealing drugs.  He was convicted at age 22 in Washington State for possession of marijuana with intent to deliver, another felony.  (PSR ¶ 55).  And in 1994, at age 23, Pearson was convicted of his first federal felony (of four) in the United States District Court for the District of New Mexico.  (PSR ¶ 58).  There, he was convicted of possession of marijuana with intent to deliver and sentenced to 30 months'

4

imprisonment and 3 years of supervised release.  Two years later, in 1996, Pearson sustained his second federal felony conviction when he was convicted in the United States District Court for the Western District of Washington of possession with intent to distribute 50 kilograms and more of marijuana and sentenced to 30 months' imprisonment and 3 years' of supervised release.  (PSR ¶ 59).  While on supervision for these federal sentences, his supervised release was revoked and he was sentenced to 27 additional months in custody.

In 2002, Pearson was arrested for manufacturing methamphetamine and charged in the United States District Court in the Northern District of Iowa.  (PSR ¶ 61). He was convicted of this offense and sentenced to 165 months imprisonment to be followed by 3 years of supervised release.  As before, after being released from prison, Pearson violated his supervised release on numerous occasions.  Pearson had been out of prison for less than two years when he committed the instant offense.

While in prison for various offenses between 1995 and the present, Pearson continued to offend, and accumulated numerous disciplinary actions, including four while incarcerated on the instant offense.  (PSR ¶ 5).

In other words, for his entire life, the defendant has engaged in a pattern of criminal behavior.   Remarkably, the defendant's life of crime has resulted in *four* federal felony drug convictions.   And at 49 years old, he seems entirely uninterested in conducting himself in accordance with the law.  The defendant is a habitual recidivist and has shown no signs of attempting—or even desiring—to reform.  The defendant's total failure to learn from his past mistakes and his continued commission of serious and dangerous crimes counsel for a lengthy term of imprisonment in this case.

*C. The Need for the Sentence to Achieve the Aims of 18 U.S.C. § 3553(a)(2)*

A significant prison sentence is necessary promote respect for the law, to protect the public, and to provide just punishment for the offenses.  Through his constant interaction with the criminal justice system, the defendant has demonstrated no respect for the law, and has made no attempt to become a productive member of the community.  The defendant invariably violated his supervised release, demonstrating an equal lack of respect for the Court's supervision.  And his serious and numerous infractions while in the custody of the Bureau of Prisons have shown a similar lack of respect for the BOP.

A significant prison sentence is also necessary to afford adequate specific deterrence to criminal conduct.  Though the defendant's prior federal criminal convictions have resulted in two 30-month sentences and one 165-month sentence, the defendant demonstrably has been undeterred from continuing to offend.  A sentence of 151 months' imprisonment, which is at the top of the defendant's Guidelines range, will hopefully work toward providing this much-needed deterrence.  When he is released from his term of incarceration as a man in his 60s, he will hopefully reached an age where he sees dealing (and using) drugs as an utter waste of the rest of his life.

If specific deterrence is unachievable with this defendant—and the Government fears it may be—then a significant prison sentence is necessary to protect the public from further crimes of the defendant. The defendant is a habitual drug dealer for whom prior convictions have not served to deter the defendant from resuming his life of crime. The prison sentence in this case is necessary to ensure the risk the defendant poses to

the public is mitigated, at least for the period of his incarceration.

### D.  A Downward Variant Sentence is Not Warranted Here

The Government is aware of the Court's position on applying the methamphetamine mixtures-and-substances Guideline in place of the "ice" Guideline as a variance.  The Government objects to this practice for reasons that have been litigated in the past, and will not repeat those arguments here.

In any event, in this case, such leniency is not warranted.  The defendant has a prior federal methamphetamine felony for manufacturing the drug.  This time, he elected to buy extremely pure methamphetamine that likely was imported to Colorado directly from Mexico.  This defendant is well aware of the dangers of manufacturing methamphetamine, using methamphetamine, and dealing it.

If the Court nevertheless varies downward based on the mixtures-and-substances calculation, the Government respectfully requests that the Court vary back upward and sentence the defendant to 151 months' imprisonment for all of the reasons stated herein.

Conclusion

The Government respectfully requests that the Court sentence the defendant to a sentence of 151 months' imprisonment to be followed by five years of supervised release.

Respectfully submitted this 31st day of December, 2019.

JASON R. DUNN
United States Attorney

By:     s/ Andrea Surratt
Andrea Surratt
Assistant United States Attorney
U.S. Attorney's Office
1801 California St., Suite 1600
Denver, CO 80202
Telephone: (303) 454-0100
e-mail: Andrea.Surratt@usdoj.gov
Attorney for the Government